Oscar GUZMAN, Plaintiff,

v.

CONCAVAGE MARINE CONSTRUCTION INC., Intercoastal Water Transportation Inc., Nicholas Concavage, and Joanne Concavage, Defendants.

Case No. 14–CV–8587 (KMK)

United States District Court, S.D. New York.

Signed March 31, 2016

Scott Anthony Lucas, Esq., Law Office Scott A. Lucas, Esq., New York, N.Y., Counsel for Plaintiff

Alisa Lynn Fermaglich, Esq., Gary Trachten, Esq., Kudman Trachten Aloe, LLP, New York, N.Y., Counsel for Defendants

## AMENDED ORDER

KENNETH M. KARAS, District Judge:

On October 28, 2014, Oscar Guzman ("Plaintiff") brought suit against his former employer—Concavage Marine Construction, Inc. and Intercoastal Water Transportation, Inc. (collectively, "the Company")—as well as Nicholas and Joanne Concavage, owners, operators, and managers of the Company (collectively, "Defendants"). (Compl. ¶¶ 11–27 (Dkt. No. 1).) The Complaint asserts (1) claims for discrimination and hostile work environment in violation of 42 U.S.C. § 1981, (see id. ¶¶ 86–110), and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., (see id. 111–17), as well as (2) claims that Defendants failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, (see id. ¶¶ 55–75), and various provisions of the New York Labor Law as well as associated regulations, (id. ¶¶ 76–85). Defendants move to dismiss the former on the grounds that Plaintiff fails to state a claim under § 1981 because Defendants' alleged discrimination cannot be plausibly termed racial, but is rather based "on status of geographic foreignness," inasmuch as Nicholas Concavage (1) angrily referred to Plaintiff—who is from El Salvador—as a "[f]ucking Mexican" and a "fucking Mexican motherfucker," (2) jokingly referred to Latino workers including Plaintiff as "fucking Spanish guys," (3) angrily told Plaintiff to "[g]o back to [his] [c]ountry," (4) took advantage of cultural differences between himself and foreign-born Latino workers, and (5) withheld, along with the other Defendants, overtime compensation from Latino employees because Defendants saw them as vulnerable and easy to control. (Letter from Gary Trachten, Esq., to Court (June 5, 2015) ("Defs.' Mem.") 2, 4–8 (Dkt. No. 23).) Additionally, Defendants seek dismissal of Plaintiff s

FLSA and New York Labor Law claims to the extent that they seek recovery for the period prior to September 3, 2012, as, they assert, his claims are waived because Plaintiff signed a Department of Labor ("DOL") Form WH–58 ("WH–58"), after the DOL conducted an investigation that found certain of Defendants' employees were owed compensation. (*See id.* at 3, 9–12.) For the reasons that follow, Defendants' Motion is denied in all respects.

### I.  *Standard of Review*

Defendant moves to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alterations, citations, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, 127 S.Ct. 1955, if a plaintiff has not "nudged [his] claim[ ] across the line

from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79, 129 S.Ct. 1937 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

■ "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *see also Dixon v. United States,* No. 13–CV–2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014) ("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff s] complaint are true."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.,* 992 F.Supp.2d 302, 304 n. 1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir.2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v.*

*Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.,* No. 12–CV–5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

## II. Analysis

### A. Section 1981

■ Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." "To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta, N.Y.,* 221 F.3d 329, 339 (2d Cir.2000). Describing the contours of a § 1981 claim, the Second Circuit has explained:

> It is established that [§ ] 1981 prohibits discrimination based on race in the making and enforcement of contracts and extends to private as well as state actors in that regard. The prohibition against racial discrimination encompasses discrimination based on ancestry or ethnic characteristics. It is also settled that [§ ] 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age.

*Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998) (citation omitted). As Defendants rightly acknowledge, discrimination against Latinos may be actionable under § 1981. *See, e.g., St. Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 612, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (noting in determining meaning of "race" in context of § 1983 claim that the legislative history of § 1981 reflected "debates ... replete with references to the ... Latin [and] ... Spanish ... races" and further noting that "Mexicans ... were similarly categorized"). Indeed, "§ 1981, at a minimum, reaches discrimination against an individual because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens." *Id.* at 613, 107 S.Ct. 2022 (italics and internal quotation marks omitted).

■ The upshot of Defendants' argument is that Plaintiff's § 1981 claim is, at best, consistent with racial discrimination, but that, because *Twombly* and *Iqbal* demand more, his § 1981 claim should be dismissed as implausible. (*See* Defs.' Mem. 4–8.) In making their case, Defendants "commend ... to this [C]ourt" the principles announced in *Akinjide v. Univ. of Maryland E. Shore,* that a § 1981 claim is appropriately analyzed as follows:

> First, the plaintiff must prove that he actually faced intentional discrimination based on his ancestry or ethnic characteristics, rather than solely on his place of origin, in order to invoke the broad construction of race under § 1981. Second, where a plaintiff's allegations reference only his place of origin and do not focus on specific ethnic characteristics associated with that place of origin, the broad construction of race under § 1981 does not apply.

No. 09–CY–2595, 2011 WL 4899999, at *8 (D.Md. Oct. 13, 2011) (citations omitted). (*See also* Defs.' Mem. 7–8.) Without explicitly editorializing one way or the other as to the wisdom of such an approach, the proposition that one discriminates on the basis of race by hurling epithets concerning "Mexican[s]" and "Spanish" people at a Salvadoran plaintiff is more than plausible. *See Sauceda v. Cent. Pool Supply, Inc.,* No. 14–CV–4053, 2015 WL 428167, at *4

(C.D.Ill. Jan. 30, 2015) (rejecting argument that the defendants' "behavior"—which included calling the half-French, half-Hispanic plaintiff a "Mexican" and yelling on several occasions that "[a]ll Mexicans are fucking stupid"—"targeted [the plaintiff] purely as a Mexican national, or child of one, and not also as a member of an 'identifiable [class] of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics'" (final alteration in original) (quoting *St. Francis Coll.*, 481 U.S. at 613, 107 S.Ct. 2022)); *cf. Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987) (rejecting the defendants' argument that the plaintiff could not establish membership in a protected minority class for purposes of § 1981, reasoning that, in light of *Saint Francis College*, "[t]here can be no question that [the class protected by § 1981] includes persons like [the] plaintiff who are of Puerto Rican descent"); *Guzman v. Comprehensive Tech. Grp., Inc.*, No. 13–CV–2925, 2014 WL 4925677, at *6 (N.D.Ga. Sept. 30, 2014) (noting that "[t]he Eleventh Circuit and others ... [have held] that [§ 1981] prohibits discrimination against a racial or ethnic group, even when the identification of that group may be synonymous with a nationality"); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. 02–CV–1509, 2006 WL 4079033, at *6 (D.N.M. June 9, 2006) ("The [c]ourt finds that [the plaintiff's] Hispanic ethnicity and Puerto Rican ancestry, which is a combination of several different groups that courts have recognized are protected under § 1981, qualify her for § 1981 protection. Accordingly, the [c]ourt will deny the [d]efendants' motion to dismiss [the § 1981 claim] to the extent that [the plaintiff] advances a claim of racial discrimination based on her Hispanic ethnicity and Puerto Rican ancestry."). Indeed, accepting Plaintiff's allegations as true, it makes intuitive sense to think that Nicholas Concavage meant to use "Mexican" and "Spanish" in their racial sense, *see St. Francis Coll.*, 481 U.S. at 612, 107 S.Ct. 2022, rather than their geographic sense, when he used those terms disparagingly to a Hispanic employee from neither Mexico nor Spain.

■ Finally, Defendants single out for special dismissal ¶ 99 of the Complaint, which reads:

> Nicholas Concavage's discrimination against Plaintiff caused him to look down on Plaintiff and discount what Plaintiff had to say. As a result, at least in part, of this distorted view of Plaintiffs worth, Concavage failed to wait for the required signal from Plaintiff when he (Concavage) was operating a crane, which, in turn, caused Plaintiff to injure his knee. (It is noted here that the New York State Worker's Compensation Law does not bar an employee from suing his employer under federal civil rights laws. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir.1987)).

(Compl. ¶ 99; *see also* Defs.' Mem. 8.) In addressing this paragraph, Defendants argue that Plaintiff is "attempt[ing] to circumvent the exclusivity of the Workers Compensation Law and obtain a recovery of damages for an alleged on-the-job injury to his knee by claiming that the injury was the consequence of intentional discrimination." (Defs.' Mem. 8.) Defendants further argue that this paragraph should be dismissed on the grounds that it is "wholly speculative, far less than plausible, regardless of whether conceivably 'possible.'" (*Id.*) Plaintiff, however, responds that Defendants' treatment of this paragraph amounts to a "de facto motion to strike." (*See* Letter from Scott Lucas, Esq., to Court (June 11, 2015) 6–10 (Dkt. No. 25) (italics omitted).) Claiming to disagree, Defendants in their reply assert that "[t]he motion with regard to ¶ 99 of the Complaint is based not on the Workers

Compensation Law, but is based on the pleading's insufficiency in showing that the injury was the result of intentional, racially discriminatory conduct." (Letter from Gary Trachten, Esq., to Court (June 26, 2015) 3 (Dkt. No. 27).) Nevertheless, Defendants ask that, "[i]f the Court concludes that Rule 12(b)(6) is the wrong avenue for seeking to excise from the case the ¶ 99 claim for damages for physical injury, ... the motion be converted to a motion to strike, and that the Court grant that motion." (*Id.* at 5.)

Plaintiff is correct that ¶ 99 is not amenable to excision on a Rule 12(b)(6) motion. *See SRSNE Site Grp. v. Advance Coatings Co.*, No. 12–CV–443, 2014 WL 671317, at *1 (D.Conn. Feb. 21, 2014) (noting that the defendant " 'move[d] to dismiss' one of the forms of relief requested by [the] [p]laintiffs," but that "[s]uch a motion is not properly a motion to dismiss and is more properly styled as a motion to strike"); *Feiner v. SS & C Techs.*, 11 F.Supp.2d 204, 210 n. 8 (D.Conn.1998) (noting, in the context of a motion to dismiss the plaintiff's claims that a prospectus contained materially false statements or omissions, that "the court decline[d] to address the materiality of every allegation in the complaint" because "[t]o do so would sua sponte convert defendants' motions to dismiss into motions to strike" (italics omitted)).

▮ The question then becomes whether this paragraph can be disposed of on a motion to strike. It cannot be. Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally disfavored and granted only if there is a strong reason to do so." *Neogenix Oncology, Inc. v. Gordon*, No. 14–CV–4427, 2015 WL 5774171, at *6 (E.D.N.Y. Sept. 29, 2015)

(internal quotation marks omitted); *see also Errant Gene Therapeutics, LLC v. Sloan–Kettering Inst. for Cancer Research*, No. 15–CV–2044, 2016 WL 205445, at *8 (S.D.N.Y. Jan. 15, 2016) (indicating that Rule 12(f) motions "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation" (internal quotation marks omitted)). Here, the allegation may well be relevant to Plaintiff's hostile work environment claim. Indeed, hostile work environment claims are to be decided on the basis of the totality of the circumstances, with an eye toward, among other things, whether the conduct "unreasonably interferes with an employee's work performance." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir.2004). As a result, it is premature to conclude that—as a matter of law—Plaintiff's allegation concerning his injury allegedly caused by Nicholas Concavage's allegedly racist, dismissive attitude toward Plaintiff is so out-of-bounds as to warrant relief upon a disfavored motion; to the contrary, it is appropriate to keep this allegation in the picture, so that the Court can later evaluate the totality of such circumstances should the question be presented upon a motion for summary judgment. Therefore, the Court declines to strike ¶ 99 and further declines to dismiss Plaintiff's § 1981 claim.[1]

### B.  WH–58

▮ Next, Defendants argue that, by signing the WH–58, Plaintiff waived his FLSA claim inasmuch as it seeks recovery for the period prior to September 3, 2012, and that, by the same logic, the Court should dismiss his New York Labor Law claim to the same extent. (*See* Defs.'

---

1.  Because Plaintiff's § 1981 claim is not dismissed, his New York State Human Rights Law claims do not fall with it. (*See* Defs.' Mem. 8–9.)

Mem. 9–14.) Neither argument is availing.

■ To begin, the FLSA contemplates a waiver of claims by employees following their receipt of compensation in connection with a DOL investigation, providing in pertinent part:

> The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) [providing a right of action for violations of §§ 206 or 207] of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c). There is no question that a signed WH–58 can operate as a release of a plaintiff's FLSA claims. *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F.Supp.2d 261, 279 (E.D.N.Y. 2013) ("[T]he signing of a WH–58 form, pursuant to a DOL settlement and which contains explicit waiver language, is sufficient to constitute a waiver in accordance with [FLSA]."); *Liang v. Cafe Spice SB, Inc.*, 911 F.Supp.2d 184, 198 (E.D.N.Y. 2012) ("[C]ourts that have determined that a plaintiff's FLSA claims were waived pursuant to a DOL settlement have found that the waiver occurred pursuant to plaintiff's receipt of a WH–58 form, which contains explicit waiver language, or a similar form containing explicit waiver language."). To determine whether it does in a particular case, however, courts have applied a two-pronged approach, noting that "a valid waiver of [a] plaintiff's right to sue requires: (a) that the employee agree to accept payment which the Secretary of Labor determines to be due and (b) that

there be payment in full, and both elements must be satisfied independently." *Liang*, 911 F.Supp.2d at 198 (alterations and internal quotation marks omitted); *see also Callari*, 988 F.Supp.2d at 278 (same).

Starting with the first inquiry, a number of courts have concluded that an employee who signs a WH–58 under duress has not "agreed" in a manner sufficient to support a release of his FLSA claims. *See Centeno v. Facilities Consulting Grp., Inc.*, No. 14–CV–3696, 2015 WL 1443171, at *7 (N.D.Tex. Mar. 31, 2015) ("A waiver is effective only when it indicates that an employee meant to settle his FLSA claims." (alterations and internal quotation marks omitted)); *Victoria v. Alex Car, Inc.*, No. 11–CV–9204, 2012 WL 1068759, at *4 (N.D.Ill. Mar. 29, 2012) (indicating agreement with analysis that "the relevant inquiry in a FLSA waiver situation is whether the plaintiffs intended to settle their claims, and [that] intent can be vitiated in cases of fraud or duress"); *Woods v. RHA/Tenn. Grp. Homes, Inc.*, 803 F.Supp.2d 789, 800 (M.D.Tenn.2011) ("As with the settlement of any other private dispute, fraud or duress renders any 'agreement' [pursuant to § 216(c) ] by the employee illusory."). It is true that there is some case law within the Second Circuit which could be taken as rebuffing this authority. *See Callari*, 988 F.Supp.2d at 290 (noting upon motion for reconsideration of summary judgment ruling that "to the extent the [p]laintiffs attempt to rely on *Woods* and *Victoria* ..., the [c]ourt notes that both of these cases are from another jurisdiction and are not controlling decisions requiring reconsideration"); *see also Lai Yoong Low v. Tian Yu Inc.*, No. 12–CV–7237, 2015 WL 1061500, at *6 (S.D.N.Y. Mar. 11, 2015) ("[The] [p]laintiffs cite *Woods* ... for the proposition that a DOL settlement pursuant to [§ ] 216(c) is invalid if it is the product of undue pressure by the employer. *Woods*

has been followed by only one other court, *see Victoria . . .*, and at least one decision in this Circuit has expressly rejected it." (citing *Callari*, 988 F.Supp.2d at 290)). However, the cases from the Second Circuit rejecting plaintiffs' claims that they signed a WH–58 under duress have been decided at the summary judgment stage, where the courts had the benefit of a more complete record. *See, e.g., Lai Yoong Low*, 2015 WL 1061500, at \*6; *Callari*, 988 F.Supp.2d at 290; *Liang*, 911 F.Supp.2d at 199. This is a real and an important distinction, *cf. Victoria*, 2012 WL 1068759, at \*4 (finding precedent in which another court granted summary judgment on the basis of a signed WH–58 despite the Spanish-speaking plaintiff's claims that he could not understand the form "distinguishable because it was decided at the summary judgment stage, after greater factual development, and because the record showed that a translator was present when the plaintiff signed the waiver form, but he did not ask the translator any questions"), and one which counsels against dismissal on a Rule 12(b)(6) Motion. Accordingly, the Court does not think that dismissal is mandated by *Callari* or *Liang*, nor does the Court think dismissal would be prudent here.

■ Defendants also argue that Plaintiff cannot escape the effect of his signed WH–58 claim, because the allegations do not make out a sufficient defense of economic duress under New York law. (*See* Defs.' Mem. 10–12.) At the outset, however, because the question is whether Plaintiff, within the meaning of § 216(c), "accept[ed]" the money provided for by the WH–58, it is not even clear that principles of New York contract law would determine the answer. *See Woods*, 803 F.Supp.2d at 800 (noting, in context of discussing § 216(c), that, "[t]o constitute a waiver, the employee's choice to waive his or her right to file private claims—that is, the employee' agreement to accept a settlement payment—must be informed and meaningful"). Nevertheless, it would be premature to conclude as a matter of law that any claim of economic duress is so deficient as to warrant dismissal of Plaintiff s FLSA claims. Indeed, "courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir.2001) (internal quotation marks omitted); *see also Mandavia v. Columbia Univ.*, 912 F.Supp.2d 119, 127 (S.D.N.Y.2012) (same), *aff'd*, 556 Fed. Appx. 56 (2d Cir.2014). Thus, where one party to a contract, through threats, has precluded the other's free will, economic duress may be found. *See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir.2011) ("To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will."); *Mandavia*, 912 F.Supp.2d at 127 (same); *Davis & Associates, Inc. v. Health Mgmt. Servs., Inc.*, 168 F.Supp.2d 109, 114 (S.D.N.Y.2001) ("A release agreement may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of his free will.") (internal quotation marks omitted). Even though "a mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress," *Interpharm, Inc.*, 655 F.3d at 142, here, there is more—a demand that Plaintiff sign a form on the spot, backed up by an alleged threat from one of Plaintiff s managers, (*see* Compl. ¶¶ 15, 44, 46). This is enough to survive Defendants' Motion to Dismiss. *Cf. Lopez v. 121 St. Nicholas Ave. H.D.F.C.*, 28 A.D.3d 429, 814 N.Y.S.2d 174, 175 (2006) (noting in context

of motion for summary judgment that "[t]he evidence raised a triable issue of fact as to whether or not the plaintiff executed the general release as a result of duress, illegality, fraud, or mutual mistake").

■ Defendants further contend that, because Plaintiff does not allege that he was anything other than an at-will employee, Defendants could fire him for not signing the WH–58, such that his release of his FLSA claims would not be undone by Defendants' coercion. (*See* Defs.' Mem. 10 & n.6, 11 (citing *Jackson v. Home Team Pest Def., Inc.*, No. 13–CV–916, 2013 WL 6051391, at *7 (M.D.Fla. Nov. 15, 2013)).) It may well be that an at-will employee will be bound by a signed WH–58, even if his employer would have fired him were the employee to have refused. However, to put on that employee the onus of anticipating such a defense and to require him to affirmatively plead that he was not an at-will employee, despite the existence of legal authority analyzing duress in the WH–58 context as a matter of federal statutory law, *see, e.g., Woods*, 803 F.Supp.2d at 800, would be to require something more than the liberal notice-pleading contemplated by Fed. R. Civ. P. 8(a).

Relatedly, Defendants also indicate that FLSA's narrow retaliation provision "does not make it unlawful for an employer to fire or threaten to fire an employee for refusing to sign on to a D.O.L. supervised settlement," and that, accordingly, "the plaintiff did not sign the WH–58 under threat of conduct made unlawful under the FLSA." (Defs.' Mem. 12.) Defendants do not demystify the basis for their belief that actions supporting a FLSA retaliation claim are coterminous with those which may constitute economic duress.[2] Nevertheless, the Court cannot say that Plaintiff's FLSA claim is implausible in light of New York's economic duress principles. *Cf. Sudul v. Computer Outsourcing Servs., Inc.*, 917 F.Supp. 1033, 1046 (S.D.N.Y. 1996) (noting that "[a] contract may be voided on the grounds of economic duress only where the complaining party was compelled to agree to the terms by a 'wrongful threat by the other party which precluded the exercise of his free will,' including threats by the other party to breach the contract by withholding performance unless the complaining party agreed to a further demand," but concluding that, in that case, "the evidence establishes that [the defendant] did not threaten to discharge [the] plaintiff, wrongfully or otherwise, or threaten to cease paying the plaintiff"). Therefore, even if FLSA does contain a narrow retaliation provision, it is too early to say that, based on the facts alleged in the Complaint, any suggestion that Nicholas Concavage's threat was at all short of perfectly lawful is not so implausible as to merit dismissal at this juncture. Therefore, the Court will not dismiss Plaintiff's FLSA claim for the period covered by the WH–58.

Additionally, because the Court has declined to dismiss Plaintiff's FLSA claim for that period, it declines Defendants' invitation to conclude that Plaintiff's analogous state-law claims are similarly extinguished by the WH–58. (*See* Defs.' Mem. 12–14.)

**2.** The answer may, however, lie in Defendants' earlier citation to *Berzin v. W.P. Carey & Co.*, a nearly 14–year old Appellate Division decision, which noted, in the context of the plaintiff's efforts to rescind a revised employment agreement, that, "given [the] defendant's express right to terminate the original agreement, its threat to do so unless [the] plaintiff agreed to the revised agreement [could not] be viewed as 'wrongful,' " such that it could not "be the basis of a cause of action for rescission of the revised agreement on the ground of economic duress." *See* 293 A.D.2d 320, 740 N.Y.S.2d 63, 64 (2002).

### III. Conclusion

For the foregoing reasons, Defendants' Motion is denied. The Clerk of the Court is respectfully requested to terminate the pending motion. (Dkt. No. 21.)

SO ORDERED.