Jamie **ANTHONY, et al., Plaintiffs,**

v.

**CONCRETE SUPPLY COMPANY, INC., Defendant.**

**CIVIL ACTION FILE NUMBER 3:16–cv–70–TCB**

United States District Court, N.D. Georgia, Newnan Division.

Signed March 20, 2017

Douglas R. Kertscher, Jennifer Lauren Calvert, Hill Kertscher & Wharton, LLP, Atlanta, GA, for Plaintiffs.

John Mason Wymer, Justin Beecher Connell, Elarbee, Thompson, Sapp & Wilson, LLP, Atlanta, GA, for Defendant.

## ORDER

Timothy C. Batten, Sr., United States District Judge

This case comes before the Court on Defendant Concrete Supply Company, Inc.'s ("CSC") motion to dismiss [24] Plaintiffs' amended complaint [21] for failure to state a claim.

## I. Legal Standard

For purposes of this motion to dismiss, the factual allegations contained in the amended complaint must be accepted as true and construed in the light most favorable to Plaintiffs. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). But the Court need not accept as true "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," nor legal conclusions couched as factual allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Viewed through this lens, the factual averments in the amended complaint must include "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. However, "detailed factual allegations" are not required. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

Finally, although *Twombly* and *Iqbal* speak of the "plausibility" of a claim, that standard does not permit dismissal of well-pled claims simply because the Court has doubts about the pleader's ultimate likelihood of prevailing. It is settled that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal punctuation omitted); *see also Davis v. Wells Fargo Bank, N.A.*, 976 F.Supp.2d 870, 881 (S.D. Tex. 2013) (noting that "a claim may be plausible even if it is unlikely to be proved").

## II. Factual Background

### A. Overview

CSC employs drivers such as Plaintiffs to haul sand, rocks, gravel, and dirt to its customers. Plaintiffs allege that CSC failed to pay them regular and overtime wages that they are due. Specifically, they allege that they were supposed to be paid 27% of the revenue generated from each haul they delivered but that CSC in fact paid them 27% of some lesser amount. Plaintiffs further assert that CSC never paid them overtime wages, even though they worked between forty and seventy-five hours per week most weeks. Plaintiffs' amended complaint asserts claims against CSC for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–216 ("FLSA"), and for breach of contract under Georgia law. Plaintiffs seek to recover for the time period between April 28, 2013 (three years before this lawsuit was filed) and April 1, 2016 (the date CSC changed its payment policies).

CSC has moved to dismiss Plaintiffs' amended complaint in its entirety. It suggests that a breach-of-contract claim is not cognizable in the absence of a written employment agreement between an employer and an employee, but even if such a claim is cognizable, CSC contends that Plaintiffs have failed to adequately plead theirs. CSC also argues that Plaintiffs waived their FLSA claims by participating in a settlement that was supervised by the United States Department of Labor ("DOL").

### B. The DOL Investigation

The DOL conducted an investigation into CSC's pay practices well prior to the commencement of this lawsuit; the amended complaint alleges that the DOL's investigation covered only the time period of November 3, 2013 through November 1, 2015. Ultimately, the DOL concluded that CSC's drivers had worked an average of five overtime hours per week and that CSC had failed to comply with the FLSA's overtime requirements. It supervised a settlement of the drivers' claims and instructed CSC to issue checks to its drivers, which CSC did.

Each of the Plaintiffs in this case was given a settlement check which he has since cashed. Each driver was also given a copy of a WH–58 "Receipt for Payment of Back Wages" form, but only some of the drivers actually signed those forms. No DOL representative was present during these interactions, and CSC did not expressly tell the drivers that they would waive or might be waiving their rights under the FLSA by accepting and cashing the settlement checks. Plaintiffs were not given the opportunity to consult with counsel before being given the checks and the WH–58 forms.

### C. Plaintiffs' Averments Regarding Non–Waiver

Plaintiffs point to two sets of averments in their amended complaint that they contend suffice to defeat CSC's waiver argument. First, they allege that the DOL's supervision of the settlement process was inadequate as a matter of law. See [21] at ¶¶ 30–32. They allege that the DOL's conclusion regarding Plaintiffs' overtime hours was speculative, unsupported by facts, and "contrary to the information given to the DOL by every person it interviewed." Id. at ¶ 30. Additionally, the DOL was unable to review any time records, did not consider the weekly hours reported by drivers, and did not consult any third parties or experts. Id. After some of the drivers notified the DOL that they believed the conclusion it had reached was inaccurate, the DOL refused to reconsider and largely ignored the drivers' concerns. Id. at ¶¶ 31–32.

Second, Plaintiffs allege that to the extent any of them agreed to waive their

FLSA rights, such agreement was neither meaningful nor informed. *See* [21] at ¶¶ 30–32 & 37–43. Plaintiffs cite to several conversations in which they were led to believe that their cashing of the settlement checks would not result in waiver of any claims. Plaintiff Octavius White alleges that "Defendant made statements to [him] that led him to believe that he would lose his job if he refused to sign the WH–58 limited release or refused the check." *Id.* at ¶ 37. When Plaintiff Jamie Anthony refused to sign the WH–58 form because he did not want to waive any rights, CSC's employee John Masler allegedly led him to "believe that he would not waive any rights if he simply took the settlement check." *Id.* at ¶ 38. Plaintiffs Titus Bussey and Marvin Jarrett similarly allege that a CSC employee named John "led [them] to believe that [their] receipt and cashing of the check, while failing to sign the WH–58 limited release, would not result in any waiver of claims against [CSC]." *Id.* at ¶¶ 39–40. Likewise, Plaintiff Willie Wilson avers that he too was told by John that it was "okay" to take the check without signing the form, thus leading him to believe that he was not releasing any claims by doing so. *Id.* ¶ 42.

Plaintiff Anthony White was told to come pick up his check, but when he refused to sign the WH–58 form, CSC employees named John and Burt told him to leave. He did so, but CSC then called him back, told him to pick up his check, and told him that he would not have to sign the WH–58 form, leading him to believe that he was not waiving any claims by accepting the check. *Id.* at ¶ 41. Plaintiff Kelvin Turner alleges that he "did not read the WH–58 receipt, but signed it and cashed the check provided to him." *Id.* at ¶ 43. CSC "simply called ... Turner in and said 'here's your check; sign here,'" without explaining that signing the form or cashing the check would release any claims against CSC. *Id.*

## III. Analysis

### A. Plaintiffs Have Plausibly Alleged Non–Waiver of All of Their FLSA Claims

██ Generally, when an employee accepts a settlement check for back wages owed to him under the FLSA in connection with a DOL–supervised settlement, he "thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also* 29 U.S.C. § 216(c) ("[T]he agreement of any employee to accept [a DOL–supervised settlement] payment shall upon payment in full constitute a waiver by such employee of any right he may have under [§ 216(b) ] to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."). But there are circumstances under which waiver will not be found to be effective.

██ Waiver is effective only where, first, the employee agrees to accept the payment deemed by the DOL to be due, and second, the employer makes payment in full. *See, e.g., Guzman v. Concavage Marine Constr., Inc.*, 176 F.Supp.3d 330, 337 (S.D.N.Y. 2016). For the first of these requirements to be satisfied, "the employee's choice to waive his or her right to file private claims—that is, the employee's *agreement to* accept a settlement payment—must be informed and meaningful." *Woods v. RHA/Tenn. Grp. Homes, Inc.*, 803 F.Supp.2d 789, 800 (M.D. Tenn. 2011) (emphasis added). That is not the case where, for example, the employer procures the employee's purported agreement by fraud or duress, by "affirmatively misstat[ing] material facts regarding the waiver, with[holding] material facts regarding the waiver, or unduly pressur[ing] the em-

ployees into signing the waiver." *Id.*; *see also Guzman*, 176 F.Supp.3d at 337 (noting that "a number of courts have concluded that an employee who signs a WH–58 under duress has not 'agreed' in a manner sufficient to support a release of his FLSA claims").

■ In addition, FLSA claims may be settled or compromised only pursuant to the oversight of either a district judge or the DOL. *See Lynn's Food Stores*, 679 F.2d at 1352–53 (noting that "[t]here are only two ways in which … claims arising under the FLSA can be settled or compromised by employees," first pursuant to a DOL-supervised investigation and settlement under § 216(c), or second through the settlement of a private lawsuit that must be scrutinized and approved by a district judge). Thus, where the DOL's investigation and supervision of the settlement process is so inadequate that it effectively eliminates this involvement by a disinterested party, that too may provide a basis upon which to find that an employee did not waive his FLSA rights in connection with a settlement. *See Niland v. Delta Recycling Corp.*, 377 F.3d 1244, 1247–48 (11th Cir. 2004) (affirming the grant of summary judgment to an employer where the evidence showed that the DOL did adequately supervise the payment of back wages to the plaintiff-employee).

■ Applying this framework to the case at hand, the Court concludes that Plaintiffs' averments plausibly allege non-waiver in a manner sufficient to survive CSC's motion to dismiss. As set forth above, the amended complaint contains various allegations relating to the manner in which CSC supposedly misled Plaintiffs regarding the effect of cashing their settlement checks, as well as the ways in which

the DOL's investigation and supervision of the settlement process was allegedly inadequate. CSC strenuously argues that the facts of this case are materially different from those in which courts have found waiver ineffective. But at the motion-to-dismiss stage, a pleading need only state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 547, 127 S.Ct. 1955. "[D]etailed factual allegations" are not required. *Chaparro*, 693 F.3d at 1337. "At this stage of the case, the court does not determine what factual circumstances might undermine a Section 216(c) waiver. It only concludes that the factual allegations in the [amended] complaint create a plausible claim that the plaintiffs' waivers do not represent a 'meaningful agreement.'" *Centeno v. Facilities Consulting Grp., Inc.*, No. 3:14-cv-3696-G, 2015 WL 1443171, at *7 n.4 (N.D. Tex. Mar. 31, 2015) (denying motion to dismiss on waiver grounds); *see also Victoria v. Alex Car, Inc.*, No. 11 C 9204, 2012 WL 1068759, at *4 (N.D. Ill. Mar. 29, 2012) (holding that "factual disputes as to what occurred when Plaintiffs signed the WH–58 forms preclude this court from finding at [the motion-to-dismiss] stage of the case that Plaintiffs have waived their FLSA claims").

After discovery, when the factual record is more well developed, the parties and the Court will be in a better position to more fully analyze whether Plaintiffs' acceptance of the settlement checks amounted to an informed agreement to release any FLSA claims. *See, e.g., Guzman*, 176 F.Supp.3d at 338 (denying motion to dismiss FLSA claim on waiver grounds and noting that many of the cases relied upon by the moving defendant "have been decided at the summary judgment stage, where the courts had the benefit of a more complete record").[1] For the time being, Plaintiffs

---

1. Indeed, summary judgment is the context in which it appears waiver arguments are most frequently—and in the Court's opinion, most

appropriately—addressed. *See Blackwell v. United Drywall Supply*, 362 Fed.Appx. 56 (11th Cir. 2010) (affirming district court's

have adequately alleged non-waiver, and accordingly, the Court will allow Plaintiffs' FLSA claims to proceed.

### B. Plaintiffs Have Plausibly Alleged a Breach-of-Contract Claim Against CSC

 Turning to Plaintiffs' claim for breach of contract, the Court first holds that such a claim is cognizable under the circumstances of this case. Under Georgia law, when an employee sues his employer for unpaid wages, the very existence of the employment relationship gives rise to a contract between the parties. *Thrower v. Peach Cty., Ga., Bd. of Educ*, No. 5:08-cv-176-MTT, 2010 WL 4536997, at *8–9 (M.D. Ga. Nov. 2, 2010). Thus, "the employment relationship is contractual in nature, whether the contract is express or implied, oral or written." *Obester v. Lucas Assocs., Inc.*, No. 1:08-cv-3491-MHS-AJB, 2010 WL 8292401, at *10 (N.D. Ga. Aug. 2, 2010), adopted at 2010 WL 8304884 (N.D. Ga. Sept. 7, 2010).

 CSC correctly points out that nothing about the contractual nature of the employment relationship transforms it into anything other than an at-will relationship terminable at will by either party. But even an at-will employee "can, under certain circumstances (when the employer makes an oral promise to pay), recover under a breach of contract theory." *Coleman v. H2S Holdings, LLC*, 230 F.Supp.3d 1313, 1319, No. 1:15-cv-3563-SCJ, 2017 WL 210683, at *5 (N.D. Ga. Jan. 18, 2017); *see also Spindel v. Nat'l Homes Corp*, 110 Ga.App. 12, 137 S.E.2d 724 (1964) (holding that an employee who actually performs services under an agreement that is terminable at will "may recover of the employer the compensation due him

for the services rendered"); *E.D. Lacey Mills, Inc. v. Keith*, 183 Ga.App. 357, 359 S.E.2d 148, 152 (1987) (observing that even an at-will employee who could not otherwise sue for breach of contract based on his or her termination "may sue on an oral contract ... for the amount of compensation due him, based upon services actually performed by him") (internal punctuation omitted).

Thus, courts are rightly loathe to find—let alone on a motion to dismiss, when all inferences must be drawn in favor of the plaintiff-employee—that no contract existed between the employer and employee. *See Thrower*, 2010 WL 4536997, at *8–9 (denying summary judgment to employer on employees' breach-of-contract claim, even though the plaintiffs' theory was unsound, because "[c]learly, if the Plaintiffs worked, they are entitled to be paid for their work at the agreed upon rate"); *Brown v. Venture Express, Inc.*, No. 3:13-cv–20–TCB (N.D. Ga. Mar. 30, 2015) (order denying motion for summary judgment [92] at 17–20) (denying summary judgment on breach-of-contract claim where the only element at issue was the existence of a contract between the parties).

 Turning to whether Plaintiffs' amended complaint adequately pleads a claim for breach of contract, the Court readily concludes that it does. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014). Plaintiffs have alleged that "Defendant contracted with [them] to pay them 27% of the revenue earned by each dump

grant of summary judgment to employer on ground that employees waived FLSA claims in connection with DOL-supervised settlement); *Callari v. Blackman Plumbing Supply,* *Inc*, 988 F.Supp.2d 261, 278–79 (E.D.N.Y. 2014) (granting summary judgment to employer on waiver argument).

truckload delivered," [21] at ¶ 49, and that it made these representations at least "in [Plaintiffs'] paystubs and [CSC's] employee handbook," *id.* at ¶ 22. They further allege that CSC subsequently breached that agreement by paying Plaintiffs "27% of a lesser amount," causing Plaintiffs to "be deprived of wages that [CSC] had contracted to pay them." [21] at ¶¶ 49–50. Additional information, such as the precise amount that Plaintiffs contend they are owed, can be obtained through discovery and need not be pled in the amended complaint in order to survive a motion to dismiss.

CSC's motion to dismiss the breach-of-contract claim will therefore be denied. However, to the extent Plaintiffs' contract claim is premised on the same facts underlying their FLSA claim, Plaintiffs "may not recover twice for the same violation; the breach of contract claim survives merely as an alternative legal theory to redress any wrong that may have been done them." *Avery v. City of Talladega*, 24 F.3d 1337, 1348 (11th Cir. 1994).

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [24] is denied. The stay of discovery that was put into place in October 2016 is lifted, and discovery shall commence immediately and last for four months, expiring on July 20, 2017.

IT IS SO ORDERED this 20th day of March, 2017.